## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

HENRY WILICK, JR.,

                  **Plaintiff,**

-vs-                               **Case No.  6:15-cv-863-Orl-40DAB**

COMMISSIONER OF SOCIAL
SECURITY,

                  **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

      The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

      For the reasons that follow, it is **respectfully RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED**.

## I.      BACKGROUND

### A.    Procedural History

      Plaintiff filed for a period of disability, DIB and SSI benefits on January 21, 2009[1], alleging an onset of disability on November 7, 2008, due to bipolar disorder, anxiety, obsessive-compulsive disorder, severe

---

[1]The DIB application apparently is not in the Administrative Record.  Doc. 19 at 2 n.2.

depression, and herniated discs. R. 39, 63, 71, 437.   His application was denied initially[2] and upon reconsideration.  R. 44-45, 419.  Plaintiff requested a hearing, which was held on April 20, 2011, before Administrative Law Judge Mary C. Montanus (hereinafter referred to as "ALJ").  R. 818-48.  In a decision dated May 27, 2011, the ALJ issued a partially favorable decision finding Plaintiff disabled as of May 1, 2010, but not before. R. 433-52.  Plaintiff timely filed a Request for Review of the ALJ's decision, the Appeals Council reviewed the decision, and remanded it to the ALJ on October 19, 2012 for further administrative proceedings.  R. 453-61.  Following remand, the ALJ held a supplemental hearing on June 11, 2013, and in a decision dated November 6, 2013, the ALJ found Plaintiff not disabled as defined under the Act through the date of her decision. R. 15-38, 849-94.  Plaintiff timely filed a Request for Review of the ALJ's decision, and the Appeals Council denied review on March 26, 2015.  R. 10-13.  Plaintiff filed this action for judicial review on May 28, 2015.  Doc. 1.

**B.      Medical History and Findings Summary**

Plaintiff was forty-five years old on the date of the ALJ's decision. R. 37. He completed two years of college and has past work experience as a short order cook, waiter, deli worker and produce stock clerk.  R. 64, 824.

Plaintiff's medical history is set forth in detail in the ALJ's decision.  By way of summary, Plaintiff complained of bipolar disorder, anxiety, obsessive-compulsive disorder, severe depression, and herniated discs. R. 63.  After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from back strain, obesity, left shoulder cystic changes, bipolar disorder and substance abuse in varying stages, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 21-22. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform less than the full range of light work, limited by occasional crouching, climbing stairs or kneeling; and only simple routine one to three step tasks; periods of concentration limited to 2 hours at a time before needing a regular work break, tolerate only minimal change in the work setting, and must avoid interaction with the general public, work in

---

[2]The Administrative Record does not contain the initial denial for DIB, but does contain the first page of the initial denial for SSI. Doc. 19 at 2 n. 3.

crowded places, or more than occasional superficial interaction with coworkers (no intensive interaction on claimant's part); and additionally, he cannot work as part of a team, and the work must require no more than occasional interaction with supervisor after initially learning tasks.  R. 23. Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work.  R. 36. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a garment bagger, merchandise marker, and laundry folder.  R. 37.  Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision.  R. 38.

Plaintiff now asserts two points of error.  First, he argues that the ALJ erred by failing to apply the correct legal standards to the opinion of Plaintiff's treating physician, Dr. Ortez.  Second, he contends the ALJ erred by improperly evaluating his and his mother's testimony.  For the reasons that follow, it is **respectfully RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED**.

## II.        STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).  "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  The district

court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. § § 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

## III.    ISSUES AND ANALYSIS

### A.    RFC and the treating physician's opinion

Plaintiff argues that the ALJ erred by failing to apply the correct legal standards to the opinion of Plaintiff's treating psychiatrist, Dr. Ortez[3], who opined that Plaintiff was moderately limited in multiple mental abilities, and markedly limited in his ability to complete a normal workday and workweek without interruptions and perform at a consistent pace without an unreasonable number and length of rest periods. R. 427, 679[4]. The Commissioner contends that the ALJ properly accorded significant weight to the moderate level of limitations in Dr. Ortez's opinion and some limitations due to sedation from Plaintiff's medication (R. 33), and gave little weight to the marked limitations in Dr. Ortez's opinion because she found this degree of limitation was not supported. Doc. 22 at 6.

---

[3]Within portions of the Administrative Record, Dr. Ortez is spelled as "Ortiz," but it is the same psychiatrist. The Court corrects the spelling without further notation.

[4]On July 16, 2013, Dr. Ortez reiterated this opinion. R. 808-11.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* The Regulations establish a "hierarchy" among medical opinions that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of nonexamining physicians, treating physicians' opinions are given more weight than non-treating physicians; and the opinions of specialists are given more weight on issues within the area of expertise than those of nonspecialists." *McNamee v. Social Security Admin.*, 162 F. App'x 919, 923 (11th Cir. Jan. 31, 2006) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(f), 416.927(f).

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's

impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Plaintiff had a lengthy history of alcohol and substance-related issues, beginning when he entered the Army at eighteen years old.  R. 253, 538.  He attended a rehab program twice while in the Army and was discharged as a "drug and alcohol rehabilitative failure after several failed detox attempts in Germany" in 1989.  R. 538, 542.  He also attended a six month program after he was arrested for DUI. R. 146, 253.  Plaintiff has an uneven earnings record, and he was a stay at home dad for 5 years, from 2002 to 2007; he also had been studying to become a medical transcriptionist and living on student loans while "his fiancee supported him."  R. 57, 147, 163, 540.  He had a series of suicide attempts following a breakup with his fiancee, arrested for domestic violence, and subject to an injunction in spring 2007.  R.  126, 141, 146, 162. He was diagnosed at that time with Bipolar Disorder type I and subsequently with Bipolar Disorder II, moderate, without psychotic features.  R. 161, 188.

Plaintiff first applied for benefits in June 2007 (a separate, previous application), and the SSA found Plaintiff met the medical requirements for disability benefits[5] (R. 437) as of April 2007 immediately following a series of suicide attempts with pills, a knife, rat poison, in April-May 2007; Plaintiff had a history of panic attacks, psychiatric treatment, with depression and anxiety. R. 116-18, 139-46, 464-65.  He attempted suicide when he was supposed to be starting a new job the next day. R. 119.

Plaintiff testified that, even though he was found medically disabled at that time, he told the SSA in June 2007 that he did not want disability because he was going back to work.  R. 437, 826.

---

[5]According to the letter sent to Plaintiff, a claimant "must meet certain medical and non-medical requirements to be entitled to disability benefits."  He was found to have met the medical requirements for disability benefits, but SSA had "not yet made a decision about whether [he met] the non-medical requirements," but would communicate that decision to him "soon."  R. 464.  Presumably the non-medical decision would consider whether Plaintiff's date of last insured to qualify for Disability Insurance Benefits had expired.

Plaintiff did work from June 2007 to November 2008 at a grocery store. R. 81, 217, 221. However, Plaintiff was fired in November 2008 because he did not get along with his boss, although the store claimed the reason was that he did not show up for work because, according to Plaintiff, he was oversedated on four different psychotropic medications (R. 80, 217, 429); when he applied for jobs at similar stores, he never gets called by them. R. 826. He filed for disability the second time in January 2009 on the basis of bipolar disorder, anxiety, obsessive-compulsive disorder, severe depression, and herniated discs. R. 63. The ALJ concluded that the SSA's prior finding of disability in conjunction with Plaintiff's June 2007 application "had no bearing on the findings" of his subsequent January 2009 application. R. 437. However, the ALJ found Plaintiff was disabled as of May 2010 because Plaintiff's impairments at that time met the Listing level criteria of section 12.04 for an affective disorder, following another suicide attempt. R. 450. The ALJ found Plaintiff was not disabled prior to May 1, 2010, but became disabled on that date and continued to be disabled through the date of her May 27, 2011 decision:

> The undersigned finds that beginning on May 1, 2010, the claimant's impairments have met listing 12.04. The "paragraph A" criteria have been satisfied because the claimant has a bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes). The "paragraph C" criteria have also been satisfied because the evidence shows a medically documented history of a chronic affective disorder of at least 2 years duration causing more than minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support and there is a residual disease process with such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate.

> In reaching this conclusion, the undersigned finds that beginning on May 1, 2010, the claimant's allegations regarding his symptoms and limitations are generally credible.

> The record reflects an exacerbation of the claimant's mental condition in May 2010. On May 10, 2010, the claimant was admitted to Orlando Health under the Baker Act 52, after an apparent overdose on medications. The claimant stated that he had been depressed for the past several weeks and became despondent and as a result took about four tablets of 50 mg Amitriptyline and six tablets of 10 mg of Ambien. He reported periods of depressed mood, insomnia, weight gain of approximately 30 pounds in 6 months, and feelings of hopelessness and helplessness. His GAF score on admission

was 30. While in the hospital, the claimant was compliant with treatment, interacted with peers and attended groups and activities and improved. He was discharged on May 13, 2010 and the final diagnosis was bipolar type I disorder, most recent episode depressed. His GAF score at discharge was 57 (Exhibit 10F). Subsequent treatment notes indicate that the claimant improved after hospitalization without significant cognitive deficit or psychotic symptoms. He was no longer considered high risk for suicide in August 2010. However, ongoing problems with motivation and anxiety when leaving the house, particularly when in crowds, were noted. On mental status examination in August 2010, problems with focus and attention were noted. Medications included Amitrypltyline, Sertraline and Haloperidol. (Exhibit 11F).

Treating psychiatrist, Dr. Ortez, completed a Mental Residual Functional Capacity Assessment on April 12, 2011. Dr. Ortez indicated that the claimant was moderately limited in understanding and memory; markedly limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and moderately limited in social interaction and adaptation. Dr. Ortez opined that the claimant had bipolar disorder and was taking several psychotropic medications that might affect his capacity to concentrate and focus. Dr. Ortez further indicated that the claimant's bipolar disorder and mood swings were frequent and could be very disabling (Exhibit 13F).

Problems in sustained functioning and following directions were also noted by the claimant's mother at the hearing.

Considering the record in its entirety, the undersigned concludes that the claimant had a significant exacerbation of symptoms in May 2010, as supported by the hospital records, describing on onset of significant depression several weeks previously. Although he improved and appeared somewhat stable after discharge, he was consistently prescribed significant psychotropic medication, including Haldol. The treatment notes reflect periods of euphoria, but also poor motivation and anxiety. *The undersigned will accept the opinion of the claimant's treating psychiatrist for this period that the claimant's mood swings precluded his ability to perform work on a regular and continuing basis. It seems that any increase in stressors at this time would result in decompensation.* The undersigned also gives weight to the testimony of the claimant's mother for the period beginning May 1, 2010, as it is consistent with the opinion of the claimant's treating psychiatrist.

R. 449-52 (emphasis added). The ALJ further noted that medical improvement was expected with appropriate treatment; thus, she recommended a continuing disability review in two years, in May 2013. R. 452. Plaintiff appealed the ALJ's partially favorable decision, arguing that he should have been found disabled as of November 7, 2008, at the time he was fired from the grocery store position. R. 466.

-8-

On October 19, 2012, the Appeals Council vacated the ALJ's *entire* hearing decision–including the portion that was partially favorable to Plaintiff–and remanded the case to "resolve" certain issues, including those concerning Plaintiff's mental limitations:

> The Administrative Law Judge found that the claimant's mental impairment met the severity requirement of Listing 12.04C.1 based on a three-day hospitalization commencing May 10, 2010. However, the claimant's mental status was essentially normal when he was discharged on May 13, 2010 (Exhibit 10F). Additionally, follow-up mental health records from the Veterans Administration Hospital and those submitted to the Appeals Council indicate the claimant was generally doing well, feeling well, and responding well to his medications. There is also no mention of any further episodes of decompensation. The record indicates that the claimant has required only intermittent and routine follow-up visits with his treating psychiatrist, Marvin S. Ortez, M.D., following the May 2010 hospitalization. *It is also noted that the claimant was accepted into an automotive course and attended school in 2010 and 2011.* Therefore, the record does not support the Administrative Law Judge's finding that the claimant's impairment met the severity requirement of Listing 12.04C.2. Accordingly, further evaluation of the record is warranted.
> * * *
> [The ALJ will] [g]ive consideration to the treating and non-treating sources opinions . . and explain the weight given to such opinion evidence. . . . Further evaluate the claimant's mental impairments in accordance with the special technique in [the SSA regulations] . . . Obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments during the entire period at issue . . . Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and . . . evaluate all of the opinion evidence of record. Obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base . . . [and] offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision.

R. 460-61 (emphasis added). The Appeals Council noted Plaintiff was enrolled in and "doing well" in the automotive class in 2010 to 2011. R. 460. Plaintiff testified that he made B's and C's in some of the automotive (motorcycle) courses, but he was struggling– he had fair grades "but no aptitude" becaue he was "not capable of handling the work involved with the automotive program"; thus, it was agreed with the head of the program that he would leave the school. R. 554, 606, 642, 876. He told a therapist that he had received failing grades and lost his financial aid, and he had to drop a class because "it was more than he could handle." R. 325, 526A, 559. Plaintiff also admitted to having problems getting along with his coworkers and bosses at work. R. 79.

Dr. Ortez was Plaintiff's treating psychiatrist at the Veterans Administration Medical Center (VAMC) for six years, beginning around the time Plaintiff was hospitalized under the Baker Act for a series of suicide attempts in early 2007.  Plaintiff saw Dr. Ortez regularly for psychiatric counseling and psychotropic medication management through the 2013 hearing.

As part of the remand from the Appeals Council, the ALJ held a new hearing on June 11, 2013 at which the medical expert, Dr. Simonds, testified that Plaintiff suffered from moderate limitations in concentration, persistence, and pace, and a little bit of sedation from his medications, but was capable of simple tasks, moderate problems in concentration, and moderate problems in social relationships.  R. 864.

In her November 6, 2013 decision, the ALJ first considered the severity of the claimant's mental impairments, finding when considered singly and in combination, they did not meet or medically equal the criteria of listings 12.04 and 12.09.  R. 21.  The ALJ also found Plaintiff had moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace, giving great weight to the opinion of the state agency reviewing physician.  R. 22.  The ALJ  gave "less weight" to the opinion of Dr. Ortez assessing greater limitations, "as there is substantial medical evidence that the claimant is not markedly impaired, based on the mental status findings, the stable course of treatment, the claimant's activities, and other medical opinion evidence cited above," which included the testimony of the non-examining medical expert (Dr. Simonds) and the state agency physician's opinion, both of which were "given greater weight as more consistent with the record viewed in its entirety."  R. 22.  In discussing Plaintiff's RFC, the ALJ gave significant weight to the  opinion of Dr. Ortez opining a moderate level of limitation, and some degree of sedation from medication.  R. 29.  The ALJ stated, "[h]owever . . . significant sedation was not noted on repeated mental status examinations indicating that the claimant

was alert, generally with adequate concentration and attention. A marked level of limitation in the area of concentration, persistence and pace is not supported, and is given little weight." R. 33.

Plaintiff contends that the ALJ erred in giving little weight to the opinion of Dr. Ortez that Plaintiff was markedly limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods based on his diagnosis of bipolar disorder, mood swings, and psychotropic medications. R. 427-28, 679-80. Plaintiff argues that the ALJ mischaracterized the evidence by describing Dr. Ortez as "generally opin[ing] that the claimant was *moderately* limited" in sustained concentration and persistence when the record reflects and the ALJ subsequently cites Dr. Ortez's opinion that Plaintiff had "marked limitations in the area of concentration, persistence and pace." Doc. 19 at 13-14 (citing R. 33, 427). The Commissioner argues that the ALJ's decision shows she properly considered Dr. Ortez's opinion as part of her assessment of Plaintiff's RFC, and that substantial evidence supports the weight accorded to his opinion, particularly the "little weight" the ALJ accorded to the marked limitations Dr. Ortez assessed. R. 33 ("A marked level of limitation in the area of concentration, persistence and pace [Dr. Ortez opined] is not supported, and is given little weight. The undersigned is persuaded in this conclusion by the medical expert [Dr. Simonds'] opinion which was well supported by the expert's review of the entire record and his testimony.").

As an initial matter, Dr. Ortez is the psychiatrist who treated Plaintiff for six years, from 2007 to the time of the hearing in 2013. He is a specialist in psychiatry. The medical expert, Dr. Simonds, is also a specialist in psychiatry, but he is a non-treating physician and did not examine Plaintiff. Additionally, while it is true that the ALJ recited Dr. Ortez's "moderate" and "marked" opinions in the eight mental abilities comprising the category of sustained concentration and persistence, the ALJ failed to make an essential distinction between Plaintiff's moderately impaired *concentration*

limitations and his marked *pace* limitations, treating them collectively in one broad category which she resolved by limiting Plaintiff's RFC to "simple routine one to three step tasks" and "concentration limited to 2 hours at a time before needing a regular work break." R. 23. The ALJ also relied on the testimony of the medical expert (Dr. Simonds), who did not specifically address Plaintiff's marked limitations in pace (*i.e.*, the ability to complete a workday/workweek or perform at a consistent pace without an unreasonable number/length of rest periods) given his frequent mood swings and sedation side effects as Dr. Ortez observed and noted during his six years of treatment of Plaintiff (R. 427).

In testifying about his opinion of Plaintiff's functional limitations, Dr. Simonds discounted Dr. Ortez's opinion:

> [T]he tasks would have to be simple one, two, or three-step at the most. . . . [H]e would have limitations due to his mental symptoms . . . his interruptions . . . with taking the medication and being treated on a regular basis, and not having any other breakthrough of any psychotic symptoms, then that can be overcome. It [sic] don't see it as being that marked [as opined by Dr. Ortez]; when we limit the work situation to a rather simple type of situation, then I would say the marked would be more in the moderate range.

R. 864-65. When questioned by Plaintiff's attorney, Dr. Simonds agreed with Dr. Ortez that Plaintiff was moderately limited in half, or ten out of the twenty, mental abilities listed on the Mental RFC form. R. 867. When Plaintiff's counsel pressed Dr. Simonds on his definition of "marked" vis a vis the ability to complete a workday or workweek or perform at a consistent pace, he responded:

> Well, I don't have a specific definition of marked[6]. It is obviously more than moderate, but it has to be considered within a context of a work situation. And if your work situations are variable, then so can -- that interruptions could be different. And he does say that he has no significant limitations in carry out short, simple instructions. So within that context, *I think you have to look at concentration and pace*. It should not be a marked limitation. It would probably be marked if he were to be in a situation for more detail or more complex activity. So I, I don't see that as across the board all work situations.

---

[6]It is troublesome that the medical expert could not articulate his definition of marked other than "obviously more than moderate." R. 868. The statutory definition for mental impairments of "marked limitation" is that it "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis. *See* §§ 404.1520a and 416.920a." 20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 12.00C.

-12-

R. 868-69 (emphasis added).  The ALJ accorded great weight to Dr. Simonds' opinion as supported by the evidence and incorporated the functional limitations as described by Dr. Simonds into Plaintiff's RFC, especially the "simple type of situation" that Dr. Simonds opined would "overcome" any issues with pace.  R. 865.  However, adjusting for simple tasks in concentration does not necessarily accommodate for an inability to keep a consistent pace and Dr. Ortez made that distinction.

On the Mental Residual Functional Capacity Form as completed by Dr. Ortez on April 12, 2011, he opined Plaintiff was moderately limited in five functional mental activities of sustained concentration and persistence: the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; and the ability to work in coordination with or proximity to others without being distracted by them.  R. 426.  However, within the same broad category of "sustained concentration and persistence," Dr. Ortez also opined that Plaintiff was *markedly* limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 427.

Dr. Ortez and other providers at the VAMC repeatedly documented that Plaintiff was easily distracted, had problems concentrating, and was unable to hold focused attention for long at his appointments.  R. 325, 347, 354, 367, 381, 526, 547, 553, 559, 632, 673, 797. Throughout most of Dr. Ortez's treatment of Plaintiff, the psychiatrist repeatedly tried to adjust Plaintiff's medications due to the sedation or lack of effectiveness that he complained about.  On March 2, 2009, Plaintiff reported to Dr. Ortez that he had started a rheumatoid arthritis medicine and he felt "knocked out" with the combination of psychotropics and the new pills. R. 183. Dr. Ortez decreased Plaintiff's

dosage of Seroquel to minimize sedation, noting that Plaintiff was taking four different psychotropic medications that had the potential side effects of somnolence and over sedation and his medications were being adjusted to try to minimize the sedative effects. R. 183.  The longitudinal medical records from the VA show that Plaintiff saw Dr. Ortez every three months and regularly complained of the prescribed medications either not working or having side effects including sedation or "dysmotivation" at a majority of the appointments.

However, the ALJ chose to rely on Dr. Simonds' testimony that Plaintiff's restrictions in concentration, persistence and pace should not be a "marked limitation" and found:

> Overall, the mental status examinations show [the claimant] does not have psychotic features and is generally doing ok on medications. The record shows he does have some problems in concentration and little bit of sedation from medications, but his symptoms are in moderate 65 ranges. Dr. Simonds concluded that the claimant was limited to simple 2 to 3 step tasks (consistent with moderate limits in concentration).

R. 32.  Neither Dr. Simonds nor the ALJ discussed Plaintiff's "moderate" limitations in pace or made the distinction between concentration and pace although this was the basis for Dr. Ortez's opinion. Dr. Simonds also responded to the ALJ's Medical Interrogatory, after reviewing additional medical records submitted by Plaintiff's counsel, and he did not discuss pace or assign any additional restrictions.  R. 802-06 ("There's no change in my testimony given June 11, 2013.").  Instead, Dr. Simonds opined Plaintiff "should be capable of simple work tasks (1-2 step) and possible low detail if continues medications."  R. 806.

There is a significant difference between concentration and pace–impacted by Plaintiff's mood swings and sedation from psychotropic medication side effects as opined by Dr. Ortez (an opinion to

which the ALJ gave "significant weight"[7] albeit at the moderate level)–contributed to Plaintiff's limitation in pace.  However, the ALJ failed to distinguish between concentration and pace.

Other courts have noted that merely limiting a claimant to "simple tasks" or "unskilled work," does not adequately account for significant limitations in pace as opposed to concentration. The 6th Circuit held that a hypothetical question posed to a VE that omitted the speed and pace-based restrictions considered by a physician and the ALJ did not accurately represent the claimant's limitations because a "plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job." *Ealy* v. *Commissioner of Soc. Sec.*, 594 F.3d 504,  516–17 (6th Cir. 2010) (reversing where ALJ's streamlined hypothetical should have included the restriction that the speed of claimant's performance could not be critical to his job); *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930–31 (E.D.Mich.2005) (a hypothetical limiting a claimant to "jobs entailing no more than simple, routine, unskilled work" was not adequate to convey moderate limitation in ability to concentrate, persist, and keep pace) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job."); *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) (allowing VE to consider only one- or two-step tasks did not account for limitations of pace). The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks, whether simple or complex, and does not address a claimant's limitations from mood swings.  *See Craft v. Astrue*, 539 F.3d 668, 677–78 (7th Cir. 2008) (restricting hypothetical to unskilled work does not consider a claimant's difficulties with memory, concentration or mood swings); *see also* SSR 85–15, 1985 WL 56857 (1985) ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an

---

[7]The ALJ found:
[Dr. Ortez] stated that because of the bipolar disorder, mood swings were frequent and could be very distracting. In one opinion he assessed marked limitations in the area of concentration, persistence and pace. These opinions are given significant weight in regard to a moderate level of limitation, and some degree of sedation from medication.
R. 33.

individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job.").

The Third Circuit, in *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004), explained the importance of the ALJ not substituting "a limitation to one to two step tasks" for a limitation in pace within the hypothetical question posed to the vocational expert, which is very similar to the limitation the ALJ found in this case in determining Plaintiff's RFC by including "simple, routine tasks."  In *Ramirez,* the court found:

> [T]his limitation does not take into account deficiencies in pace. Many employers require a certain output level from their employees over a given amount of time, and *an individual with deficiencies in pace might be able to perform simple tasks, but not over an extended period of time.* If [plaintiff] often suffers deficiencies in pace and this had been included in the hypothetical, vocational expert Stratton may have changed her answer as to whether there were jobs in the local or national economy that [plaintiff] could perform. In fact, the vocational expert testified that each of the jobs suitable to [plaintiff] (assembler, packer, and inspector) would have daily production quotas and that [plaintiff] would have to maintain a certain degree of pace to maintain those jobs.

*Id.* (emphasis added).

In this case, the VE testified–in response to the hypothetical that did not include a limitation on pace–that Plaintiff could perform the requirements of occupations such as garment bagger, merchandise marker, and laundry folder.  R. 37.   The VE also testified that an individual who was off task for more than one-third of the workday or absent two days per month would not be tolerated in a competitive environment.  R. 891.  As part of the RFC determination (or hypothetical), the ALJ did not ask the VE to include a restriction on pace.  As such, the ALJ's decision was not based on substantial evidence and must be **REVERSED** and **REMANDED**.

> **B.**     **Plaintiff's and his mother's testimony**

Plaintiff asserts that the ALJ erred in evaluating his subjective symptoms as supported by his testimony and his mother's testimony.

Plaintiff's mental impairments are non-exertional impairments. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain and other subjective impairments can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to his symptoms is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A). Where an ALJ decides not to credit a claimant's testimony about subjective symptoms, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff testified at the administrative hearing on June 11, 2013, that his medications cause drowsiness and jitters and, after he took his medications, he usually had to lay down for his stomach to settle. R. 873-77. His mother testified that her son had difficulty getting out of bed in the morning; would then take his medications, but then he would become tired again; and would not be able to work at a job that required him to be there eight hours a day, five days a week because he would frequently miss days of work because he gets tired and was unable to focus or follow through on things. R. 883-85.

The ALJ gave their testimony "some weight" in assessing the limitations because it reflected Plaintiff's "difficulty in functioning socially and in areas of concentration and focus," but found "the mental status findings, the course of treatment, the claimant's activities and the expert opinion is given

greater weight for the reasons" discussed in the rest of her decision. R. 33. It is perplexing that the ALJ found in her original decision that "beginning on May 1, 2010, the claimant's allegations regarding his symptoms and limitations are generally credible." R. 449-52. The ALJ also gave "weight to the testimony of the claimant's mother for the period beginning May 1, 2010, as it is consistent with the opinion of the claimant's treating psychiatrist." R. 449-52. Their testimony at the two hearings was generally consistent and supported by the medical records and treatment notes of Dr. Ortez. On remand, the ALJ will address the credibility of any testimony given by Plaintiff or a third-party such as his mother.

## IV.    CONCLUSION

For the reasons set forth above, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence. Accordingly, it is **respectfully RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), the Clerk of the Court be directed to enter judgment and close the file.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on May 17, 2016.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy

-18-

